UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY IZUOGU,<br><br>                      Plaintiff,<br><br>              v.<br><br>CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, NEW YORK (CACIB),<br><br>                      Defendant. | 24 Civ. 4329 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

      Plaintiff Anthony Izuogu ("Plaintiff" or "Mr. Izuogu"), proceeding *pro se*, brings this action against Credit Agricole Corporate and Investment Bank, New York ("Defendant" or "CACIB").[1] His Complaint[2] includes five counts raising employment discrimination and labor-related claims under (1) Title VII of the Civil Rights Act 1964 (Title VII); (2) the New York State Human Rights Law (NYSHRL); (3) the New York City Human Rights Law (NYCHRL); (4) 42 U.S.C. § 1981 (Section 1981); and (5) the Fair Labor Standards Act (FLSA).[3]

      Before the Court is CACIB's motion to dismiss pursuant to Rule 12(b)(6), ECF No. 10.[4] For the reasons discussed below, CACIB's Motion is **GRANTED.**

---

[1] *See* Compl., ECF No. 1.

[2] Mr. Izuogu's Complaint, *see* Compl., is occasionally written in narrative format without separate, numbered paragraphs. Therefore, where applicable, this Opinion cites to the relevant PDF page number, unless otherwise indicated.

[3] *See* Compl. ¶ 1.

[4] All references to Rules are to the Federal Rules of Civil Procedure.

## BACKGROUND

Unless otherwise specified, the following facts are taken from the Complaint and assumed to be true for purposes of adjudicating CACIB's Motion.[5] The Court construes these facts in the light most favorable to Mr. Izuogu as the non-moving party.[6]

Mr. Izuogu was hired by Aramark Services, Inc. ("Aramark") to work for CACIB as an "Event/Catering Coordinator."[7] Mr. Izuogu's role "was described to him as planning and coordinating events for [CACIB], managing allocation of conference and meeting rooms, [and] coordinating catering orders and setups for meetings and events."[8] Mr. Izuogu was supervised by Ross Chasko and, later, by Georgia Gordon ("Gordon"), both Aramark employees.[9] In addition, Mr. Izuogu asserts that two CACIB employees, Michael Colon ("Colon") and Milan Patell ("Patell"),[10] "assigned . . . [him] new work responsibilities" and then "mount[ed] a campaign of discriminatory harassment against" him.[11]

In his Complaint, Mr. Izuogu alleges four primary instances of "mistreatment[]."[12] The first alleged incident occurred in 2022, when Mr. Izuogu informed CACIB employee Nicole Baltzer ("Baltzer") that there were no conference spaces available that accommodated her meeting

---

[5] *See Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021). In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[6] *See id.*

[7] Compl. ¶ 18.

[8] *Id.*

[9] *Id.* ¶ 19.

[10] The Complaint spells Milan Patell's last name as "Patel," however, the Court adopts the spelling used in Defendant's Brief. *See* Def.'s Mem. Supp. Mot. to Dismiss at 4 n.1, ECF No. 11.

[11] Compl. ¶ 19.

[12] *See id.* at 5-11.

needs within his booking privileges.[13] When Mr. Izuogu offered to reach out to the unit in charge of facilities to determine if there were other rooms available, he claims Baltzer declined, allegedly stating that "she would rather reach out to a colleague of hers in HR."[14] "A few minutes later," Mr. Izuogu avers that his supervisor, Gordon, asked him to meet her in her office to discuss a complaint she received from Colon regarding Mr. Izuogu's "refus[al] to reserve meeting space."[15] Colon allegedly complained to Gordon that, even though space "on the 19th floor was available," Mr. Izuogu "refused to reserve it."[16] However, Mr. Izuogu contends that Defendant instructed him that the space on the 19th floor "was a special space with restricted usage" that was "not designed for use as conventional meeting space."[17] Mr. Izuogu claims that Colon knew about these usage restrictions on the 19th floor but still "chose to make a false complaint . . . as part of his continued campaign to falsely accuse [Mr. Izuogu] and create justification for adverse employment actions."[18]

The second alleged incident involved a photoshoot on the 19th floor.[19] Although Colon and Patel allegedly instructed Mr. Izuogu "that visitors or employees of the bank were not allowed to take pictures on the 19th floor unless authorized," he claims that he complied with requests from a photographer to vacate his workspace so that a group could take photos there.[20] Mr. Izuogu says that he resumed working once the group was done taking photos, but was later asked to vacate his

---

[13] *See id.* at 6.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at 6-7.
[18] *Id.* at 7.
[19] *Id.*
[20] *Id.* at 7-8.

workspace by the same group again, which Mr. Izuogu says he did.[21] Mr. Izuogu then claims that he called Patell who was "not aware of any planned or authorized photo shoot," but nonetheless told him to "step away until they finished," which Mr. Izuogu says he did.[22]

"A couple of minutes later," Mr. Izuogu claims that his supervisor[23] told him that Colon "reached out to her complaining angrily that [Mr. Izuogu] tried to prevent Defendant's employees from taking pictures on the 19th floor."[24] Mr. Izuogu avers that he told his supervisor that Colon's "constant biased and unnecessary complaints . . . against him had become intolerable and [were] negatively affecting his work."[25] His supervisor allegedly responded that "complaints against [Mr. Izuogu] would lead to adverse actions against him, including termination if demanded by" Colon and Patell.[26] His supervisor also allegedly "reiterated that [Colon and Patell] were not friendly to [Mr. Izuogu], and that she was constantly under pressure from both men for adverse employment actions to be taken against [him], and that if it came to that, the Defendant's interest would prevail, no matter how unfair it was to [Mr. Izuogu]."[27]

The third incident involved an unidentified "lady" who allegedly took a picture of Mr. Izuogu without his consent on her mobile phone and then "left the floor" before he could "speak with her."[28] Mr. Izuogu maintains that he reported this incident to an unnamed supervisor

---

[21] *Id.* at 8.

[22] *Id.*

[23] It is not clear from Mr. Izuogu's Complaint to which supervisor he is referring. *See id.*

[24] *Id.*

[25] *Id.* at 8-9.

[26] *Id.* at 9.

[27] *Id.*

[28] *Id.*

and provided said supervisor with information "to locate the lady."[29] He also claims that he told this supervisor that he "did not want his image . . . to be retained."[30] The supervisor then "forwarded email exchanges between her, the lady, and the person the lady was reportedly visiting with regarding the incident."[31] "The same day," Mr. Izuogu contends that his unnamed supervisor "decided to handle the matter without involving" Colon and Patell because "she knew that" they "would surely have a biased response" against Mr. Izuogu.[32] However, the Complaint alleges that Colon and Patell later learned about this incident and "were upset that [Mr. Izuogu] dared to complain."[33]

Mr. Izuogu also asserts allegations pertaining to "[a]n administrative assistant named Joycelyn Fernandez" ("Fernandez").[34] Specifically, Mr. Izuogu claims that Fernandez "pester[ed] [him] with demands that were not [his] job," "spread damaging gossips" about him, and "wrote [him] emails that had disregarding tones."[35] Even though Mr. Izuogu says that he "reported this to his supervisor," he claims that Fernandez's "excesses continued."[36]

Mr. Izuogu additionally contends that his supervisor contacted him, asking "what he . . . did 'again' [such] that [] Colon and [] Patel were livid . . . ."[37] Mr. Izuogu claims that he "again reported to [his supervisor] that he was being harassed" by Colon and Patell.[38]

---

[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.* at 10.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*

5

Mr. Izuogu's supervisor then allegedly informed him that Colon and Patel "effectively made a definite demand for [him] to be decisively 'dealt with'" and that "adverse actions against [him] were imminent."[39] The supervisor allegedly added that Colon and Patel "made relentless negative reports and complaints against [Mr. Izuogu]," and that, "based on the demands of the Defendant," she contacted Aramark's "Vice President . . . and [] HR . . . for the purpose of taking employment actions against" him.[40] Mr. Izuogu alleges that his supervisor "was convinced that" Colon and Patell's "antagonistic behaviors towards him were motivated by racial bias, and that their desired outcome was to terminate [Mr. Izuogu's] employment."[41]

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[42] "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff[']s] favor."[43] However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'"[44] "A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'"[45]

---

[39] *Id.* at 11.

[40] *Id.*

[41] *Id.*

[42] *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))

[43] *Id.* at 106-07.

[44] *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[45] *Rubenstetn v. Ishizuka*, No. 23 Civ. 4332, 2025 WL 1489375, at *2 (S.D.N.Y. May 23, 2025) (quoting *Bell Atl. Corp.*, 550 U.S. at 558).

Even under the heightened pleading standards set by *Iqbal* and *Twombly,* a court is "obligated to construe a *pro se* complaint liberally."[46] Thus, when considering *pro se* submissions, a court must interpret them "to raise the strongest arguments that they suggest."[47] Nevertheless, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face."[48]

## DISCUSSION

The Court addresses Mr. Izuogu's various claims in turn below, proceeding in four parts: (1) federal employment discrimination claims; (2) federal hostile work environment claims; (3) FLSA claims; and (4) New York State and City law claims.

### I.   Federal Employment Discrimination Claims

#### A.   Legal Standards for Discrimination Claims under Title VII and Section 1981

Title VII "prohibits employment discrimination on the basis of race, color, religion, sex, or national origin."[49] Section 1981 similarly "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."[50] "In analyzing § 1981 claims, [courts] apply the same standards as in Title VII cases."[51]

---

[46] *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

[47] *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

[48] *Bodley v. Clark,* No. 11 Civ. 8955, 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *see also, e.g.*, *Green v. McLaughlin,* 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("*[P]ro se* complaints must contain sufficient factual allegations to meet the plausibility standard . . . .").

[49] *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

[50] *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).

[51] *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000); *Cadet v. All. Nursing Staffing of N. Y., Inc.*, 632 F. Supp. 3d 202, 222 (S.D.N.Y. 2022) ("Hostile work environment, disparate treatment, and retaliation claims are analyzed in the same manner and under the same tests under both Title VII and Section 1981.").

7

Where, as here, a plaintiff does not purport to present "direct evidence of discrimination" but instead relies on circumstantial evidence of intent, the complaint must "be plausibly supported by facts alleged in the complaint [] that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."[52] "Generally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is minimal."[53]

To allege the third element, an adverse employment action, courts in this Circuit previously required a plaintiff to have endured some "*materially significant disadvantage* with respect to the terms of the plaintiff's employment."[54] "But the landscape has changed with the Supreme Court's decision in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024)."[55] In that case, the Supreme Court resolved a Circuit split and rejected decisions of various Courts of Appeals—including the Second Circuit's—that required plaintiffs to allege "materially significant" employment actions.[56] Instead, employment discrimination plaintiffs need only allege "some harm respecting an identifiable term or condition of employment," but that harm need not be "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar."[57]

As for the fourth element, a minimal inference of discriminatory intent can arise from a variety of circumstances, including "the employer's criticism of the plaintiff's performance in

---

[52] *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

[53] *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

[54] *Littlejohn*, 795 F.3d at 311 n.10 (emphasis in original).

[55] *Anderson v. Amazon.com, Inc.*, No. 23 Civ. 8347, 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024).

[56] *See Muldrow*, 144 S. Ct. at 973 n.1, 974.

[57] *Id.* at 974.

8

ethnically degrading terms; or its invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."[58]

### B. Application

Assuming without deciding that Mr. Izuogu was an employee of CACIB and not an independent contractor for purposes of Title VII and Section 1981 (a point that CACIB disputes[59]), his federal employment discrimination claims fail because he has not pled an adverse employment action. He alleges four instances of mistreatment: (1) that a Bank employee (Colon) falsely complained that he had failed to reserve a meeting space;[60] (2) that the same Bank employee unfairly complained that he had interfered with a photo shoot at the Bank;[61] (3) that an unnamed "lady" took an unauthorized photograph of him;[62] and (4) that a Bank administrative assistant (Fernandez) "kept pestering [him] with demands that were not [his] job," and that she "then started spreading damaging gossips" and "wrote Plaintiff emails that had disregarding tones."[63] Mr. Izuogu alleges that this treatment, collectively, amounted to a "constructive dismissal" from his job.[64]

Defendant argues that none of these incidents constitutes an adverse employment action let alone a constructive discharge, within the meaning of Title VII.[65] The Court agrees, as courts have

---

[58] *Littlejohn*, 795 F.3d at 312.

[59] *See* Def.'s Mem. at 9.

[60] *See* Compl. at 7.

[61] *See id.* at 8-9.

[62] *See id.* at 9-10.

[63] *Id.* at 10.

[64] *Id.* ¶ 4.

[65] *See* Def.'s Mem. at 10-11.

9

held that incidents of this nature are not actionable under Title VII.[66] Although these cases predate the Supreme Court's decision in *Muldrow*, that decision does not change the analysis, as Mr. Izuogu has not alleged a harm with respect to "an identifiable term or condition of employment."[67] In his opposition, Mr. Izuogu notes that discrimination claims can be proven by "indirect evidence."[68] That is correct. But he does not respond to Defendant's point, that these incidents, even if true, do not rise to the level of actionable conduct under Title VII or Section 1981. Accordingly, Mr. Izuogu's federal employment discrimination claims are dismissed.[69]

## II.    Federal Hostile Work Environment Claims

Mr. Izuogu also appears to allege claims under Title VII and Section 1981 for hostile work environment based on race or national origin.[70] The Court addresses these claims below.

### A.    Legal Principles

To establish a hostile work environment, a "plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[71] This requires the plaintiff to show that the alleged misconduct was "severe or pervasive enough to create an objectively hostile or abusive work environment," and that she "also subjectively perceive[d] that environment to be abusive."[72] "To decide whether

---

[66] *See, e.g.*, *Catania v. NYU Langone Health Sys.*, 22 Civ. 4362, 2022 WL 17539121, at *4 (S.D.N.Y. Dec. 5, 2022) ("Being 'unfairly criticized' by a supervisor simply does not rise to the level of intolerability such that a reasonable person would have felt compelled to resign.").

[67] 144 S. Ct. at 974.

[68] Pl.'s Opp'n Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 11, ECF No. 30.

[69] Because the Court dismisses Mr. Izuogu's employment discrimination claims for failure to state an adverse action, it does not address CACIB's alternative argument that he has failed to adequately allege the causation element of such claims. *See* Def.'s Mem. at 11-12.

[70] *See* Compl. ¶¶ 4, 6, 29, 33, 54.

[71] *Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003).

[72] *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d Cir. 2010).

10

the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse."[73] "In short, a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment."[74] "But isolated incidents or episodic stray remarks are not sufficiently continuous and concerted in order to be deemed pervasive."[75] Moreover, a plaintiff must show that "the conduct that he claims created a hostile environment was the result of his race [or other protected characteristic]."[76]

### B. Application

This claim faces numerous obstacles. For one, CACIB denies that it was Mr. Izuogu's employer,[77] although Mr. Izuogu argues that it was.[78] CACIB also argues that the four incidents described by Mr. Izuogu do not rise to the level of an actionable hostile work environment, which means a "workplace [that] was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."[79] The Court agrees. The complaints to Mr. Izuogu's supervisor and the gossip and rude emails described in the Complaint simply do not rise to the level of "an objectively hostile or abusive work environment."[80]

---

[73] *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

[74] *Id.*

[75] *Adams v. Equinox Holdings, Inc.*, 662 F. Supp. 3d 444, 459 (S.D.N.Y. 2023).

[76] *Royall v. City of Beacon*, No. 24 Civ. 3, 2024 WL 4266546, at *20 (S.D.N.Y. Sept. 23, 2024).

[77] *See* Def.'s Mem. at 9.

[78] *See* Pl.'s Opp'n at 3-4, 7-8.

[79] *Alfano*, 294 F.3d at 373-74.

[80] *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

11

Second, Mr. Izuogu does not allege that any of the remarks, gossip, or false complaint that he allegedly endured referenced his race or national origin in any way. Nor does he allege that similarly situated persons outside of his protected class(es) were treated differently than he was. With respect to causation, he simply alleges his own conclusion and a single similarly conclusory statement by "his supervisor Georgia Gordon [that CACIB's] agents were hostile to [him]" because they were "obviously motivated by racial and nationality bias against [him]."[81] But this is too conclusory to establish causation.[82] "Courts consistently dismiss similar cases where the plaintiff makes only conclusory allegations with regard to causation."[83] Accordingly, Mr. Izuogu's federal hostile work environment claims are dismissed.

### III. FLSA Claims

Section 216(b) of the FLSA guarantees employees a federal minimum wage and overtime pay.[84] Mr. Izuogu alleges that he was misclassified by CACIB, which denied him "all the benefits he was entitled to as an employee."[85] He does not specify precisely what these purported benefits were.[86] Mr. Izuogu further alleges that CACIB failed to "provide any form of compensation to [him] for all the additional work responsibilities placed on him outside the role for which he was hired."[87] Setting aside the issue of whether Mr. Izuogo was an employee of CACIB, he does not

---

[81] Compl. ¶ 6.

[82] *See* Def.'s Mem. at 12.

[83] *Byas v. Yonkers Pub. Sch.*, No. 23 Civ. 8437, 2025 WL 963977, at *8 (S.D.N.Y. Mar. 31, 2025) (citing cases).

[84] *See* 29 U.S.C.A. § 216.

[85] Compl. ¶ 59.

[86] *See, e.g., id.* ¶¶ 2, 3, 21 (referencing, without describing, "other benefits accorded all other employees of the Defendant").

[87] *Id.* ¶ 28.

12

allege that he was denied minimum wage or overtime payments.[88] The Court is unaware of any claim under the FLSA for a standalone worker misclassification claim with respect to particular benefits (other than minimum wage or overtime pay). Separate and apart from minimum wage and overtime, the FLSA does not guarantee a particular form of compensation for any particular position. Accordingly, Mr. Izuogu does not state a claim for a violation of his rights under the FLSA.

Mr. Izuogu also states in his Complaint that, when he "complained of possible FLSA violation and exploitation on December 8, 2021, in retaliation, the Defendant's response was to send [him] home for two weeks."[89]  "[A] plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."[90] To engage in protected activity for purposes of a FLSA retaliation claim, a plaintiff must "file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA."[91] Here, while Mr. Izuogu alleges that he made a complaint under the FLSA, the substance of his complaint does not involve any rights protected by that statute. Accordingly, he has failed to state a claim for retaliation under the FLSA.[92]

---

[88] *See generally id.*

[89] *Id.* ¶ 28.

[90] *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

[91] *Aflalo v. Cantor Fitzgerald, L.P.*, 298 F. Supp. 3d 688, 695 (S.D.N.Y. 2018).

[92] The Court notes that the headers for Mr. Izuogu's federal discrimination claims—i.e., those under Title VII and Section 1981—nominally make reference to "retaliation." *See* Compl.

In sum, for the reasons stated above, Mr. Izuogu's FLSA claims are dismissed.

## IV. New York State and City Law Claims

Under New York law, a plaintiff is statutorily barred from raising a claim under the NYSHRL or the NYCHRL based on the same incidents underlying a complaint that the plaintiff has raised before the New York State Division of Human Rights (NYSDHR).[93] Courts in this District have therefore dismissed NYSHRL and NYCHRL claims under such circumstances pursuant to this statutory election of remedies bar.[94]

Here, there is no dispute that Mr. Izuogo's claims were considered by the NYSDHR, which determined that there was no probable cause for his discrimination claims. *See* Compl. ¶ 15; *id.* Ex. A. But Mr. Izuogu contends that the statutory election of remedies bar does not apply where "the NYSDHR investigation of a complaint was at the [instigation] of US Equal Employment Opportunity Commission"[95] (EEOC), and cites *Starks v. Metropolitan Transportation Authority* for that proposition.[96] But that is not what happened here. Here, Mr. Izuogu filed a complaint

---

at 14, 16. But even liberally construing Mr. Izuogu's allegations in light of his *pro se* status, there is nothing in his Complaint that remotely describes retaliation on the basis of race or national origin, or retaliation for asserting his rights (or those of others) to be free from discrimination on those bases. Accordingly, the Court does not construe the Complaint as raising claims for retaliation on those bases, or under those statutes.

[93] *See* N.Y. Exec. Law § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court . . . unless such person had filed a complaint [with the NYSHDR] or with any local commission on human rights"); N.Y.C. Admin. Code § 8-502(a) (same).

[94] *See, e.g.*, *Rasmy v. Marriott Int'l, Inc.*, No. 16 Civ. 4865, 2017 WL 773604, at *4-5 (S.D.N.Y. Feb. 24, 2017) (holding that, where plaintiff brought complaint under the NYSHRL before the NYSDHR, any claims under the NYSHRL *and* NYCHRL were barred because plaintiff's claims "ar[o]se from the same discriminatory practices" and were "premised on substantially the same series of incidents") (emphasis added).

[95] Pl.'s Opp'n at 8.

[96] Index No. 155317/2022, 2023 WL 8035649 (N.Y. Sup. Ct. Nov. 17, 2023).

14

directly with the NYSDHR.[97]  By contrast, in *Starks*, the plaintiff filed a discrimination charge with the EEOC, and the EEOC transferred the charge, without the plaintiff's consent, to the NYSDHR.[98]  The court held that the plaintiff's claims were not subject to the statutory election of remedies bar because, under the particular facts of her case, she never sought or consented to have her complaint filed with the NYSHDR.[99]  None of that is the case here.

Accordingly, the Court concludes that Mr. Izougu's New York State and City law claims are barred and are therefore dismissed.

## V.     Leave to Amend

District Courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects but leave to amend is not required where it would be futile.[100]  Here, the Court determines that amendment would be futile with respect to Mr. Izuogu's federal employment discrimination claims because his alleged mistreatment does not and cannot as a matter of law rise to the level of an adverse employment action or a hostile work environment.  Amendment would also be futile as to his FLSA claims, as he does not allege or even suggest overtime or minimum wage violations.  Finally, amendment would also be futile with respect to his state and local law claims, which are statutorily barred.  These claims are therefore **DISMISSED WITH PREJUDICE**.

---

[97] *See* Compl., Ex. A, at 1 ("On 6/14/22, Anthony Izuogu filed a complaint with the New York State Division of Human Rights . . . .").

[98] *See* 2023 WL 8035649, at *2-3.

[99] *See id.* at *3-4.

[100] *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given."); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

## CONCLUSION

For the reasons stated above, CACIB's motion to dismiss is **GRANTED**. This case is dismissed with prejudice.

The Clerk of Court is respectfully requested to terminate ECF No. 10, and to close this case. The Clerk of Court is further directed to mail a copy of this Opinion and Order to Mr. Izuogu and note service on the docket.

SO ORDERED.

Dated: October 2, 2025

New York, New York

DALE E. HO
United States District Judge